UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRY DILLINGHAM,

        Plaintiff,

     v.

T. JOHNSON, et al.,

        Defendants.

Case No. 13-cv-05777-YGR (PR)

**ORDER GRANTING DEFENDANT MEJIA'S MOTION FOR SUMMARY JUDGMENT; AND ADDRESSING PLAINTIFF'S PENDING MOTIONS**

Before the Court is the motion for summary judgment filed by the former Health Care Appeals Coordinator at Salinas Valley State Prison ("SVSP"), Defendant F. Mejia, the only Defendant against whom claims remain in this action. Dkt. 80. Plaintiff Jerry Dillingham, who filed the instant *pro se* action pursuant to 42 U.S.C. § 1983 stemming from alleged constitutional violations in connection with a cell fight that occurred at SVSP on January 18, 2013, opposes the motion. Defendant Mejia filed a reply. The motion was taken under submission on the papers. Also pending before the Court are Plaintiff's two motions entitled, "Motion for Administrative Relief." Dkts. 95, 96. Finally, Plaintiff filed an unsolicited surreply to the other Defendants' previously-filed motion for summary judgment, which those Defendants seek to strike. Dkt. 90.

Having considered the parties' papers, the Court GRANTS Defendant Mejia's motion for summary judgment, addresses Plaintiff's motions, and dismisses the motion to strike as moot.

**DEFENDANT MEJIA'S MOTION FOR SUMMARY JUDGMENT**

**I.    BACKGROUND[1]**

In an Order dated October 28, 2014, this Court screened the complaint under 28 U.S.C. § 1915A, and found that Plaintiff had stated multiple cognizable claims, including Eighth Amendment claims resulting from the January 18, 2013 incident in which he was attacked by his cellmate, inmate Lozano. Dkt. 15 at 2. The Court specifically found two section 1983 claims against Defendant Mejia: (1) the alleged mishandling of Plaintiff's inmate appeals constituted

---

[1] Because the only remaining claims are against Defendant Mejia, the Court will limit its background to the facts relating to Plaintiff's claims against this Defendant.

United States District Court
Northern District of California

deliberate indifference to his safety; and (2) the denial of access to the courts. *Id.* The Court served Defendant Mejia as well as the following Defendants: (1) California Department of Corrections and Rehabilitation ("CDCR") Secretary J. Beard; and (2) the following persons at SVSP: Correctional Officers T. Johnson and D. Moon; Sergeants E. Howard and Warren; Lieutenants R. A. Kessler and E. Medina; Captains V. Solis and R. Mojica; Clinical Psychologist C. Sanders; and Warden Randy Grounds. *Id.* at 2-3.

On February 27, 2015, the other named Defendants (Beard, Johnson, Moon, Howard, Warren, Kessler, Medina, Solis, Mojica, Sanders and Grounds) moved for summary judgment. Dkt. 34. Plaintiff opposed the motion, and Defendants filed their reply. Dkts. 89, 96.

On August 14, 2015, Defendant Mejia moved for summary judgment. Dkt. 80.

In an Order dated September 23, 2015, the Court granted the other named Defendants' motion for summary judgment. Dkt. 92. However, the Court chose not to rule on Defendant Mejia's pending motion for summary judgment at that time because it had not yet been fully briefed. *Id.* at 1 note 1. The Court noted that it would resolve Defendant Mejia's motion in a separate Order. *Id.* The Court added that when a final judgment is entered, it would include a judgment in favor of the other Defendants and against Plaintiff. *Id.* at 33.

As mentioned above, the Court now turns to Defendant Mejia's motion for summary judgment. First, Defendant Mejia argues that Plaintiff's Eighth Amendment claim fails because, fundamentally, it is based on a mere disagreement with his psychologist, Defendant Sanders, which cannot form the basis of a deliberate indifference claim. Dkt. 80 at 1. Specifically, Defendant Mejia argues that the undisputed facts show that: (1) Defendant Mejia did not receive Plaintiff's health care appeals; (2) any alleged mishandling of Plaintiff's health care appeals did not cause the January 18, 2013 cell fight; and (3) Defendant Mejia was unaware of a risk of harm posed by inmate Lozano. *Id.*

Second, Defendant Mejia argues that Plaintiff's access to the court claim is also fatally flawed because Plaintiff cannot demonstrate an actual injury to existing or contemplated litigation. Moreover, despite Plaintiff's claims that his appeals were mishandled, Defendant Mejia notes that Plaintiff's claims raised in his December 17, 2012 appeal were litigated before the Court in the

instant action.  *Id.* at 1-2.

Lastly, even if a constitutional violation occurred, Defendant Mejia argues for an entitlement to qualified immunity.  *Id.* at 2.

Plaintiff has opposed the motion,[2] and Defendant Mejia has filed a reply.  Dkts. 93, 94.

## II.   DISCUSSION

### A.   Factual Background

#### 1.  Plaintiff's Mental Health Treatment and Requests for Single-Cell Housing

The following background relating to Plaintiff's mental health treatment at SVSP and requests for single-cell housing was taken from the Court's September 23, 2015 Order:

> Plaintiff was diagnosed with Schizotypal Personality Disorder, and was receiving mental health treatment at the Correctional Clinical Case Management Services level of care at SVSP.  Sanders Decl. ¶ 2.  Schizotypal Personality Disorder is defined as a pervasive pattern of social and interpersonal deficits marked by acute discomfort with, and reduced capacity for, close relationships as well as by cognitive or perceptual distortions and eccentricities of behavior.  *Id.* ¶ 3.  The disorder is characterized by ideas of reference (i.e., mistaken beliefs that innocuous or coincidental events have strong personal significance), paranoid ideation, magical thinking, odd appearance or grooming, and odd speech patterns (e.g., vague or circumstantial communication).  *Id.*  Plaintiff exhibited each of these traits.  *Id.* ¶ 4.  The disorder is treated with cognitive and behavioral psychotherapy ("CBT"), and sometimes with medication.  *Id.*

> Defendant Sanders managed Plaintiff's treatment as part of an Interdisciplinary Treatment Team ("IDTT") that included a psychiatrist and a correctional counselor.  *Id.* ¶ 2.  Defendant Sanders and the IDTT developed a treatment plan based on CBT interventions, such as coping skills, social skills, and reality testing.  *Id.*  His treatment also included specific social skills designed to reduce conflicts with other inmates and staff.  *Id.*; Dillingham Depo. 90:17-91:2.3.  Plaintiff testified at his deposition that he had a good relationship with Defendant Sanders, who "helped [Plaintiff] quite a bit."  Dillingham Depo. 82:20-22.

> Between February and April 2012, Defendant Sanders saw Plaintiff four times for mental health monitoring and treatment.  Sanders Decl. ¶ 5.  Beginning in April 2012, Defendant Sanders noted that Plaintiff exhibited an increase in paranoid ideation.  *Id.*

---

[2] In opposition to the pending dispositive motion, Plaintiff has filed a "Separate Statement of Disputed Factual Material Facts Supporting Plaintiff['s] Undisputed Evidence In Opposition to Defendant F. Mejia's Separate Statement Motion for Summary Judgment," which the Court construes to be his verified opposition.  Dkt. 93.

¶ 6. Plaintiff had reported work stress, and believed he was the target of a conspiracy. *Id.* Defendant Sanders concluded that Plaintiff should continue with his treatment plan, and provided him with education on coping skills. *Id.*

By July 2012, Plaintiff's paranoid ideation included a perceived conflict with prison staff. *Id.* ¶¶ 7-8. During treatment visits, Plaintiff claimed that "over the years," staff had told other inmates that he was "CIA" and "FBI." *Id.* ¶ 7. During one visit, he presented statements from other inmates that purported to corroborate his story. *Id.* ¶ 8. Defendant Sanders was aware that Plaintiff had raised these allegations with custody staff, but did not know if they were valid. *Id.* Defendant Sanders's clinical concern was that Plaintiff could be distorting reality. *Id.*

In September 2012, Defendant Sanders found Plaintiff was "embroiled in conspiracy ideation" and was paranoid about being attacked in his cell. *Id.* ¶ 9. Defendant Sanders educated Plaintiff on cognitive tools to alleviate paranoia. *Id.* Plaintiff testified that he had been hearing voices during this time period, and that Defendant Sanders was helping him understand whether the voices were real. Dillingham Depo. 19:6-20:10, 22:15-24, 84:10-15. Plaintiff also requested a single cell. Sanders Decl. ¶ 9. To address his request, Defendant Sanders referred Plaintiff to psychiatry for an intervention to help reduce paranoia. *Id.*

Requests for single celling are common among inmates receiving mental health treatment. *Id.* ¶ 10. Again, no clinical necessity for single-cell housing exists unless the inmate has expressed homicidal intent towards his cellmate. *Id.* Moreover, mental-health staff does not have the authority to assign an inmate to single-cell housing. *Id.* Such decisions are made by custody staff based on safety and security concerns. *Id.* As a last resort, mental-health clinicians may recommend single-cell housing if all other treatment options to assist the inmate have been exhausted. *Id.* Whether such a recommendation is necessary is a clinical decision made by the IDTT. *Id.* ¶¶ 10, 17.

Plaintiff met with a psychiatrist, Dr. Jones, on October 10, 2012, regarding his paranoia and single-cell request. *Id.* ¶ 11. Dr. Jones diagnosed Plaintiff with Schizotypal Personality Disorder, as well as Anxiety and Depression. *Id.* Plaintiff was not on psychiatric medication at that time, but agreed to a trial of Prozac. *Id.* Later that month, Defendant Sanders also examined Plaintiff and found him embroiled conspiracy ideation regarding being called a "snitch." *Id.* ¶ 12. Plaintiff was imagining voices calling him a snitch and a rat. Dkt. 1 7 at ¶ 5; Dillingham Depo. 84:20-85:3. Defendant Sanders helped him with "reality checks" during this time. Dillingham Depo. 89:20-90:16.

On December 12, 2012, Defendant Sanders examined Plaintiff and found he still showed paranoid ideation and was embroiled in thoughts of conspiracy. Sanders Decl. ¶ 13. Plaintiff reported that he was starting to have "problems" with his cellmate, whom he had been housed with for about two months. *Id.* Defendant Sanders determined that Plaintiff should continue his

treatment plan and work on coping skills to alleviate his paranoia. *Id.* He referred Plaintiff to psychiatry for an intervention to help reduce paranoia. *Id.* That same day, Plaintiff was assigned a new cellmate, inmate Lozano. Howard Decl. ¶ 6. Defendant Sanders did not see Plaintiff again until January 18, 2013. Sanders Decl. ¶¶ 13-15.

On January 10, 2013, Plaintiff was seen by a psychiatrist, Dr. Tusel, regarding his paranoia and single-cell request. *Id.* ¶ 14. Dr. Tusel increased Plaintiff's Prozac dosage and provided him with education on coping skills. *Id.*

As mentioned above, on January 18, 2013, Plaintiff was involved in a cell fight with inmate Lozano. *Id.*; Compl. 13 ¶ 35. Defendant Sanders saw Plaintiff in a holding cell following the fight. Sanders Decl. ¶ 15. Plaintiff stated that his cellmate attacked him for being a snitch. *Id.* Defendant Sanders found Plaintiff was exhibiting paranoid ideation and conspiracy ideation. *Id.* Defendant Sanders educated Plaintiff regarding coping skills and set a follow-up. *Id.* Plaintiff testified that before that date, he did not tell Defendant Sanders that about a specific safety concern regarding inmate Lozano, or that Lozano had threatened him. Dillingham Depo. 87-88. Defendant Sanders examined Plaintiff again during visits on January 25, January 28, and February 7, 2013. Sanders Decl. ¶ 16. Plaintiff reported that his paranoia had increased as a result of the cell fight. *Id.* Plaintiff also claimed that he had a new cellmate who was incompatible. *Id.* Defendant Sanders found that Plaintiff was exhibiting paranoid ideation and was embroiled in thoughts of conspiracy. *Id.* Defendant Sanders educated Plaintiff regarding coping skills, and planned to meet with the IDTT to reevaluate Plaintiff's treatment plan. *Id.*

On February 13, 2013, Defendant Sanders met with Plaintiff's IDTT, including Dr. Tusel and Correctional Counselor Hjelden, to evaluate Plaintiff's treatment plan. *Id.* ¶ 17. The IDTT concluded that Plaintiff's symptoms were not improving with treatment via coping skills and medication. *Id.* His symptoms had caused problems for him at work and with cell mates, and he had recently been involved in a cell fight. *Id.* In light of Plaintiff's ongoing interpersonal problems, and because all other treatment options has been exhausted without success, the IDTT agreed that Plaintiff should be recommended for single-cell housing until his next classification hearing in August 2013. *Id.*

Dkt. 92 at 3-6.

### 2.  Plaintiff's Allegations Regarding Defendant Mejia and Health Care Appeals

Plaintiff claims that he tried to submit a health care appeal on December 17, 2012, regarding Defendant Sanders's mental health treatment and Plaintiff's purported need for single-cell housing. Dkt. 1 at 9 ¶ 13.[3]

---

[3] Page number citations refer to those assigned by the Court's electronic case management

5

United States District Court
Northern District of California

1   Plaintiff's complaint alleges that Defendant Mejia rendered Plaintiff's administrative

2   remedies "unavailable" by failing to provide Plaintiff with "investigatory protection" as well as

3   "medical review [and] redress" within the required appeal timeframe of "(30) working days."  *Id.*

4   at 9 ¶ 14.  According to the purported December 17, 2012 health care appeal, Plaintiff claimed that

5   Defendant Sanders should have provided him with single-cell housing on account of his mental

6   health condition.  Dkt. 2-1 at 14, 16.  Plaintiff alleged that double-celling exacerbated his paranoia

7   and anxiety, and caused him to have recurring nightmares about being assaulted.  *Id.*  He requested

8   an order overturning Defendant Sanders's decision to deny single-cell housing.  *Id.*  Plaintiff's

9   appeal did not request emergency relief.  *Id.*

10   Plaintiff's complaint also alleges that on January 8, 2013, he attempted to resubmit the

11   December 17, 2012 health care appeal by submitting a CDCR Form 22 or "Inmate/Parolee

12   Request for Interview, Item or Service."  Dkt. 1 at 10 ¶ 18.  Plaintiff asserts the January 8, 2013

13   CDCR Form 22 indicates that Nurse "D. Tyler" delivered the appeal to "Appeals Coordinators

14   [Mejia], Bright, Fox."  *Id.*; *see* Dkt. 2-1 at 31.  Again Plaintiff alleges that Defendant Mejia failed

15   to respond to his appeal within the thirty-day timeframe.  Dkt. 1 at 10 ¶ 19.  Plaintiff states that

16   such a failure to response shows that Defendant Mejia "intentionally indifferently single[d]

17   Plaintiff out" and prevented Plaintiff from having "equal access to the Medical Mental Health

18   Caer [sic] Machinery Administrative Exhaustion remedies."  *Id.*

19   Plaintiff's complaint contains no other factual allegations regarding Defendant Mejia.

20   **3.  Health Care Appeals Process at SVSP and Relevant Appeal History**

21   CDCR provides inmates with an administrative appeals process, which allows an inmate to

22   appeal any departmental decision, action, condition, or policy that adversely affects the inmate's

23   welfare.  Cal. Code Regs. tit.15, § 3084.1(a); Villafuerte Decl. ¶ 2.  Appeals regarding health care

24   issues at SVSP, including mental health treatment decisions, are reviewed by the Health Care

25   Appeals Office.  Villafuerte Decl. ¶ 2.  The Health Care Appeals Office does not accept or review

26   inmate grievances regarding custodial issues.  *Id.*

27

28

filing system and not those assigned by Plaintiff.

Inmates may submit health care appeals through the prison's institutional mail, or they may use the appeal collection boxes located in each housing unit. Mejia Decl. ¶ 3. Health Care Appeals Office staff do not collect inmate mail or appeals directly from the housing units, which is handled by housing-unit staff. *Id.* ¶ 3. Those health care appeals are then routed to the Health Care Appeals Office. *Id.* Defendant Mejia states in his declaration that he never received appeals via hand-delivery from non-appeals-office health care staff. *Id.* ¶ 4. An office technician was responsible for the initial intake, date-stamping, and sorting of appeals received by the Health Care Appeals Office. *Id.* ¶ 3. The sorted appeals were then delivered to an inbox for further processing by the Health Care Appeals Coordinator. *Id.* Every appeal that was received was logged into a computerized tracking system. *Id.*

As the Health Care Appeals Coordinator, Defendant Mejia's duties included screening, logging, routing, and assigning health care appeals submitted by inmate-patients. *Id.* ¶ 2. Appeals that were accepted for review were assigned to health care staff for a response. *Id.* ¶ 4. After health care staff completed the appeal response, they returned the response to the Health Care Appeals Coordinator for tracking and processing. *Id.*

Plaintiff's health care appeal records show that he did not submit any health care appeals while at SVSP in 2012 and 2013. Villafuerte Decl. ¶ 4 & Ex. B. These records also show Plaintiff's prior use of the health care appeals process. *Id.*, Ex. B. He pursued health care appeals in 2009 and 2010 at SVSP.[4] *Id.*

As mentioned above, Defendant Mejia claims that he never received any health care appeals via hand-delivery from non-appeals-office staff. Mejia Decl. ¶ 4. Nurse Tyler also submitted a declaration regarding Plaintiff's purported January 8, 2013 CDCR Form 22, explaining that she signed the CDCR Form 22 only to acknowledge that she received the document. Tyler Decl. ¶ 2. However, she claims that it was her general practice to forward such appeals to the Health Care Appeals Office via institutional mail. *Id.* ¶ 3. During her service at SVSP, Nurse Tyler claims that she never personally hand-delivered any inmate health care appeals

---

[4] More recently, Plaintiff submitted an appeal in 2014 at the California Substance Abuse Treatment Facility ("CSATF"), where he is currently housed. Villafuerte Decl., Ex. B.

1  to the Health Care Appeals Coordinator.  *Id.* ¶ 4.

2  **B.  Legal Standard for Summary Judgment**

3  Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment

4  on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The

5  court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

6  material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v.*

7  *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of

8  establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

9  317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in

10  the record").  If the moving party meets this initial burden, the burden then shifts to the non-

11  moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*,

12  477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

13  (1986).

14  A district court may only consider admissible evidence in ruling on a motion for summary

15  judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

16  Submitted in support of the motion for summary judgment are Plaintiff's deposition and all

17  attached exhibits (Dkts. 37-1, 37-2) as well as declarations from the following: Defendant Mejia;

18  Current Health Care Appeals Coordinator J. Villafuerte; and Registered Nurse D. Tyler (Dkts. 81-

19  83).  Meanwhile, Plaintiff has filed his verified complaint (Dkt. 1) as well as his supporting

20  exhibits (Dkt. 2-1), and his verified opposition to Defendant Mejia's motion (Dkt. 93).  The Court

21  will construe these filings as affidavits under Federal Rule of Civil Procedure 56, insofar as they

22  are based on personal knowledge and set forth specific facts admissible in evidence.  *See*

23  *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

24  **C.  Legal Claims**

25  **1.  First Claim: Eighth Amendment Violation**

26  **a.  Applicable Law**

27  The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison

28  officials take reasonable measures for the safety of inmates.  *See Farmer v. Brennan*, 511 U.S.

United States District Court
Northern District of California

8

825, 834 (1994). In particular, officials have a duty to protect inmates from violence at the hands of other inmates. *See id.* at 833. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *See id.* at 834.

To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety. *See id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.* He need not "'believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault.'" *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted). Before being required to take action he must, however, have more than a "mere suspicion" that an attack will occur. *Id.*; *see, e.g.*, *id.* at 460 (summary judgment appropriate as to defendants when plaintiff "failed to come forward with facts showing that these defendants had any reason to believe he would be attacked by the assailant").

When, as here, the prisoner seeks damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). *Leer* explained that "it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages." *Id.* In the former case, a broader and more generalized approach to causation is taken. *See id.*

> When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the [E]ighth [A]mendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. Especially when . . . a prisoner seeks to hold a prison employee individually liable because another prisoner attacked him, the prisoner must establish individual fault. Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

United States District Court
Northern District of California

1    *Id.* at 633-34 (citations omitted).

2              **b.  Analysis**

3              In its September 23, 2015 Order granting the other Defendants' motion for summary

4    judgment, the Court noted that the dispute at that time focused on the mental state of each

5    Defendant when each acted.  Dkt. 92 at 21.  The Court determined that the other Defendants more

6    than met their initial burden on summary judgment.  *Id.*  Specifically, the Court found that the

7    evidence demonstrated that Defendants Beard, Medina, Mojica, Sanders, Howard and Kessler did

8    not know, and could not have known, that Plaintiff's safety was at risk on January 18, 2013.  *Id.*

9    In addition, the Court determined that while Plaintiff had presented evidence that he alerted

10   Defendants Solis, Moon and Johnson to inmate Lozano's perceived threat to Plaintiff's safety, the

11   record showed that these Defendants did not possess the requisite mental state, i.e., that they each

12   were subjectively, deliberately indifferent to the inmate's safety.  *Id.*  As such, the Court granted

13   these Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claims.  *Id.*

14   at 21-28.

15             Here, Plaintiff similarly alleges that he made Defendant Mejia aware that his cellmate

16   assignment was a threat to his safety.  Specifically, Plaintiff claims that prior to the January 18,

17   2013 incident, he sent Defendant Mejia two inmate appeals: (1) a December 17, 2012 health care

18   appeal regarding Defendant Sanders's mental health treatment; and (2) a January 8, 2013 CDCR

19   Form 22 in which Plaintiff attempted to resubmit the December 17, 2012 health care appeal.  Dkt.

20   1 at 9 ¶¶ 13-14, 10 ¶¶ 18-19.  Defendant Mejia points out that Plaintiff's Eighth Amendment claim

21   "rests solely on his allegations that he tried to submit a December 17, 2012 health care appeal

22   regarding Dr. Sanders's refusal to give him single-cell housing, and he did not receive a response

23   within 30 days."  Dkt. 80 at 9 (citing Dkt. 1 at 9-10 ¶¶ 13-14, 18-19; Dkt. 2-1 at 15-16).  In its

24   October 28, 2014 Order of Service, the Court found that these allegations stated a deliberate

25   indifference to safety claim based on the subsequent cell fight with Inmate Lozano on January 18,

26   2013.  Dkt. 15 at 2.

27             As explained above, Defendant Mejia argues that Plaintiff's claim fails based on the

28   following reasons:  (1) the December 17, 2012 health care appeal is based on a mere disagreement

United States District Court
Northern District of California

10

United States District Court
Northern District of California

with Defendant Sanders, which cannot form the basis of a deliberate-indifference claim;
(2) Defendant Mejia did not receive Plaintiff's health care appeals, and even if it had been received, any alleged mishandling of Plaintiff's health care appeals did not cause the January 18, 2013 cell fight; and (3) Defendant Mejia was unaware of a risk of harm posed by inmate Lozano. Dkt. 80 at 1.  The Court addresses each in turn.

### 1)  No Underlying Constitutional Violation by Defendant Sanders

Defendant Mejia notes that Plaintiff's Eighth Amendment claim against is entirely predicated on Defendant Mejia's alleged failure to process and grant a health care appeal challenging Defendant Sanders's clinical judgment regarding single-cell housing.  Dkt. 80 at 9. Thus, Defendant Mejia compares this claim to a failure-to-intervene claim, stating: "Plaintiff's theory of liability derives its meaning from the purported underlying violation—i.e. Dr. Sanders's decision not to recommend single-cell housing."  *Id.* (citing *Claiborne v. Blauser*, 2013 U.S. Dist. LEXIS 49103, *12-13 (E.D. Cal. Apr. 4, 2013); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995)).

In its September 23, 2015 Order, the Court granted Defendant Sanders's motion for summary judgment as to Plaintiff's claim of deliberate indifference to his serious mental health needs.  Dkt. 92 at 17-20.  The Court stated as follows:

> . . . no evidence exists showing that Defendant Sanders purposefully ignored Plaintiff's complaints of relating to his mental health needs or need for a single-cell assignment.  To the contrary, the record demonstrates that Defendant Sanders and the medical staff promptly and consistently responded to Plaintiff's complaints.  While the course of treatment may not have been precisely what Plaintiff requested or desired, a mere difference of opinions regarding the course of medical treatment fails to state a claim for deliberate indifference.  *See Toguchi,*[5] 391 F.3d at 1058, 1059-60; *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Furthermore, no genuine dispute of material fact exists regarding whether Defendant Sanders's treatment decisions were clinically unacceptable under the circumstances.  The record shows no indication whatsoever that single cell status was medically necessary for Plaintiff.  While Plaintiff was involved in a fight with his cellmate on January 18, 2013, after Defendant Sanders's decision not to recommend a single-cell assignment, Plaintiff at most states a medical negligence claim against Defendant Sanders,

---

[5] *Toguchi v. Chung*, 391 F.3d 1051, 1056 (9th Cir. 2004).

11

which is not cognizable under section 1983.  *See Farmer*, 511 U.S. at 835-36 & n.4 (Neither negligence nor gross negligence will constitute deliberate indifference.).

Dkt. 92 at 19-20 (footnote added).

Defendant Mejia argues that "[b]ecause it is undisputed that [Defendant] Sanders's clinical decision did not amount to deliberate indifference, the failure to process a grievance challenging that decision cannot support an independent deliberate-indifference claim." Dkt. 80 at 9 (citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (a prison official's involvement in the handling of inmate appeals, without more, is not actionable under section 1983); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (the denial of an administrative appeal does not contribute to the underlying violation)).

As mentioned above, the Court granted Defendant Sanders's motion for summary judgment as to the deliberate indifference claim upon concluding that Plaintiff's difference of opinion regarding the course of medical treatment chosen by Defendant Sanders failed to state a claim for deliberate indifference.  Dkt. 92 at 19 (citing *Toguchi*, 391 F.3d at 1057).  Moreover, the Court found that "no genuine dispute of material fact exist[ed] regarding whether Defendant Sanders's treatment decisions were clinically unacceptable under the circumstances." *Id.* Accordingly, the Court agrees with Defendant Mejia's argument and finds that it then follows that the failure to process a grievance challenging Defendant Sanders's aforementioned treatment decisions also cannot establish deliberate indifference.

### 2)  Defendant Mejia Did Not Cause the Alleged Constitutional Violation

In order to prevail on a claim for damages, a prisoner plaintiff also must establish that each defendant's deliberate indifference was the "actual and proximate cause" of the deprivation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  *Leer*, 844 F.2d at 634.  The "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Id.* at 633.  To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff instead must "set forth specific facts" showing how each individual defendant actually and proximately caused the deprivation of his or her federal rights.

United States District Court
Northern District of California

1    *Id.* at 634.  Especially in claims for damages against prison employees, the prisoner must establish

2    individual fault.  *Id.*  Likewise, statements based on "information and belief," do not raise triable

3    issues of fact.  *Taylor v. List*, 880 F.2d 1040, 1045 n.3 (9th Cir. 1989).

4           Plaintiff alleges that Defendant Mejia failed to respond to his December 17, 2012 health

5    care appeal.  However, Defendant Mejia has presented evidence showing that he never received

6    such an appeal because Plaintiff's Health Care Services Appeal History shows that the only two

7    SVSP health care appeals submitted were in 2009 and 2010.  *See* Villafuerte Decl. ¶ 4, Ex. B.

8    Plaintiff's assertions that he took steps to submit his December 17, 2012 health care appeal do not

9    create a triable dispute regarding whether Defendant Mejia actually *received* that appeal.  Plaintiff

10   previously testified that he addressed and mailed that appeal to the prison's Health Care Appeals

11   Office.  Dillingham Depo. 124:22-126:24.  However, Defendant Mejia has presented evidence

12   showing that he was not responsible for the collection and handling of either inmate mail or

13   appeals from the prison's housing units.  Mejia Decl. ¶¶ 2-4.  Those duties are specifically

14   assigned to the prison's housing-unit staff and appeals-office technicians.  *Id.*

15          In addition, Plaintiff cannot demonstrate that Defendant Mejia actually received the

16   January 8, 2013 resubmission of the appeal on the CDCR Form 22.  Plaintiff relies solely on the

17   purported January 8, 2013 CDCR Form 22 to connect Defendant Mejia to his claim, alleging that

18   Nurse Tyler "personally served" Defendant Mejia with the CDCR Form 22.  *See* Dkt. 1 10 ¶ 18.

19   However, Nurse Tyler has submitted a declaration stating that she only signed the CDCR Form 22

20   as an acknowledgment of her receipt of the document.  Tyler Decl. ¶¶ 2-3.  She claims that she

21   "did not complete the sections regarding whether the Form 22 was forwarded to another staff via

22   in-person delivery."  *Id.* ¶ 2.  She adds that she did not personally hand-deliver any inmate health

23   care appeals to the Health Care Appeals Coordinator at SVSP.  *Id.* ¶ 3.  Plaintiff has not submitted

24   any evidence to rebut Defendant Mejia's evidence establishing that he did not actually receive

25   Plaintiff's health care appeal.  Nor can Plaintiff hold Defendant Mejia responsible for any alleged

26   mishandling of Plaintiff's health care appeal or CDCR Form 22 by other prison staff.  *See Taylor*,

27   880 F.2d at 1045 (no vicarious liability under section 1983).

28          Even assuming that Defendant Mejia received the CDCR Form 22 on January 8, 2013,

1  Plaintiff cannot connect the causal chain showing that the mishandling of Plaintiff's CDCR Form

2  22 caused the January 18 fight.  Plaintiff's claim is premised on the assertion that Defendant Mejia

3  did not respond to his appeal within the 30-day timeframe.  Dkt. 1 at 10 ¶ 19.  But if true,

4  Defendant Mejia was not required to provide Plaintiff with a response to the January 8, 2013

5  CDCR Form 22 until February 8—three weeks after Plaintiff's fight with inmate Lozano on

6  January 18, 2013.  *See* Villafuerte Decl., Ex. A at 1-12-1 to 1-12-3.  Moreover, Plaintiff's CDCR

7  Form 22 did not allege an emergency situation or even purport to be an emergency appeal

8  warranting a shorter response time.  *See* Dkt. 2-1 at 14-16.

9         Finally, Plaintiff cannot establish causation because it is undisputed that, even if Defendant

10  Mejia had received Plaintiff's December 17, 2012 health care appeal, he could not have prevented

11  the January 18, 2013 fight.  Defendant Mejia has submitted a declaration stating that he is not a

12  medical professional, and that he lacks the authority to decide substantive health care issues raised

13  in inmate appeals.  Mejia Decl. ¶¶ 2-3.  Instead, as the Health Care Appeals Coordinator,

14  Defendant Mejia's role was more one that was administrative and procedural.  *Id.*  For Defendant

15  Mejia to have prevented the fight with inmate Lozano, Defendant Mejia would have had to

16  override Defendant Sanders's clinical judgment by granting Plaintiff's request for a single cell.

17  Because it is undisputed that Defendant Mejia could not make that decision, Plaintiff cannot

18  establish causation and his claim must fail.  *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d

19  1062, 1084 (9th Cir. 2013) (a prison official that reasonably relies on the opinion of medical staff

20  does not act with deliberate indifference); *Johnson v. Doughty*, 433 F.3d 1001, 1011-12 (7th Cir.

21  2006) (a non-medical official cannot be held liable for deliberate indifference for failing to directly

22  respond to medical complaints from a prisoner already receiving treatment); *George*, 507 F.3d at

23  609-10 (7th Cir. 2007) (denial of an administrative grievance does not contribute to the underlying

24  violation).

25                    **3)  No Deliberately Disregarding Known Risk to Plaintiff's Safety**

26         Prison officials have a duty under the Eighth Amendment to protect inmates from violence

27  at the hands of other inmates.  *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).  But there can be

28  no liability unless an inmate proves that officials knew of, and deliberately disregarded, a

substantial risk of serious harm. *Id.* at 838-39. In the failure-to-protect context, this standard requires "more than a mere suspicion that an attack will occur." *Berg*, 794 F.2d at 459. The deliberate-indifference standard must take into account the realities of prison life and prison officials' competing interests and choices, which are not susceptible to judicial evaluation. *Id.* at 461.

As previously explained, Defendant Mejia has presented evidence demonstrating that he did not receive any health care appeals from Plaintiff in December 2012 and January 2013. *See* Villafuerte Decl. ¶ 4; Mejia Decl. ¶ 4; Tyler Decl. ¶ 3. Thus, Plaintiff has failed to raise a genuine issue for trial that Defendant Mejia was aware of any facts regarding Plaintiff's mental health treatment or his requests for single-cell housing. *See Farmer*, 511 U.S. at 837 (deliberate indifference requires actual awareness of a substantial risk of harm).

But even assuming that Plaintiff submitted the December 17, 2012 health care appeal as alleged, and further assuming that Defendant Mejia received and read the appeal, Plaintiff's claim still fails because his purported appeal did not allege facts that would have made Defendant Mejia aware of the risk of assault by inmate Lozano. Plaintiff's December 17, 2012 health care appeal claims he request from Defendant Sanders a single-cell-housing placement due to mental health problems, but that his request was denied. Dkt. 2-1 at 14-16. Plaintiff also attached a declaration from inmate Antonio James stating that prison staff told inmate James that Plaintiff was "working for the CIA" and that he was an "informant" or a "snitch." *Id.* at 16. Thus, Plaintiff claimed that "leaving [him] double celled has left [him] in a foreseeable dangerous precarious situation because SVSP cannot determine if [inmate] James has spread the information." *Id.* As a result, Plaintiff claims that he has "nightmares where [his] celly is stabbing [Plaintiff], or [his] cellmate] is going to kill [Plaintiff]." *Id.* Notably, the appeal does not name his "celly" or even allege that inmate Lozano threatened him or did anything that posed a risk to his safety. *Id.* In fact, the appeal does not make any reference to inmate Lozano, who had only been living with Plaintiff for five days.[6] *Id.* Rather, Plaintiff's appeal alleged that he needed a single cell to "[s]o as to minimize [his]

---

[6] Inmate Lozano was assigned as Plaintiff's cellmate on December 12, 2012. Howard Decl. ¶ 6.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    recurring bouts of wanting to harm [himself] due to [his] fragile mental health . . ." and "to prevent

2    further injury to [his] mental health." *Id.*

3        Pursuant to the law outlined above, Defendant Mejia need not have believed to a "moral

4    certainty" that Plaintiff was at risk of attack by inmate Lozano before being obligated to take steps

5    to prevent such an attack. *See Berg*, 794 F.2d at 459.  Before being required to take action

6    Defendant Mejia must, however, have more than a "mere suspicion" that an attack will occur. *See*

7    *id.*

8        While a prisoner's failure to give prison officials advance notice of a specific threat is not

9    dispositive with respect to whether prison officials acted with deliberate indifference to the

10   prisoner's safety needs, deliberate indifference will not be found where there is no other evidence

11   in the record showing that the defendants knew of facts supporting an inference and drew the

12   inference of substantial risk to the prisoner. *Labatad v. Corrs. Corp. of America*, 714 F.3d 1155,

13   1160-61 (9th Cir. 2013).  In *Labatad*, the plaintiff sought damages and injunctive relief based on

14   an assault by a member of a rival prison gang, with whom he was temporarily assigned to share a

15   cell. *Id.* at 1157.  The Ninth Circuit affirmed the district court's rejection of Labatad's claims that

16   the defendants were deliberately indifferent to the risk he faced from the cell assignment. *Id.* at

17   1160-61.  The Ninth Circuit noted that the added fact that Labatad had fought three days earlier

18   with a member of his cellmate's gang was "not a basis to find deliberate indifference." *Id.* at

19   1161.

20       Defendant Mejia argues that Plaintiff's December 17, 2012 health care appeal presents

21   allegations that are far less compelling than those raised in *Labatad*.  This Court agrees.  Here, by

22   contrast, Plaintiff's December 17, 2012 health care appeal merely alleged a dispute with

23   Defendant Sanders about the appropriateness of single-cell housing.  While Plaintiff alleged harm

24   was that he had "nightmares" of attacks by his cellmate, he did not support his claim to show that

25   such an attack by his new cellmate was imminent, or that he faced an actual threat of such an

26   attack.  Thus, even if Defendant Mejia had read the appeal, he would not have known that

27   Plaintiff's cellmate posed an intolerable risk of assault.  At best, Plaintiff's appeal suggested a

28   "mere suspicion" that such an attack would occur, which is insufficient to show deliberate

1   indifference to inmate safety.  *See id.* at 1160; *Berg*, 794 F.2d at 459.

2          In sum, a triable issue does not exist regarding whether inmate Lozano was known to

3   Defendant Mejia to be a danger to Plaintiff prior to the January 18, 2013 incident.  When the

4   evidence is viewed in the light most favorable to Plaintiff, and inferences therefrom drawn in his

5   favor, a reasonable jury could not find that Defendant Mejia was deliberately indifferent to a

6   known risk to Plaintiff's safety.  Therefore, Defendant Mejia is entitled to judgment as a matter of

7   law on the Eighth Amendment claim of deliberate indifference to Plaintiff's safety needs.  *See*

8   *Celotex*, 477 U.S. at 323.

9                    **2.   Second Claim: Denial of Access to the Courts**

10          Prisoners have a constitutional right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343,

11  350 (1996).  An inmate's right to meaningful access to the courts extends to established prison

12  grievance procedures.  *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995) *abrogated on other*

13  *grounds by Shaw v. Murphy*, 532 U.S. 223 (2001).  To establish a claim for a violation of this

14  right, the prisoner must prove that he suffered "actual injury" because he was denied such access.

15  *Id.* at 350-55.  To prove an actual injury, he must show that the actions of prison officials hindered

16  his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement.

17  *See id.* at 354-55.

18          Here, Plaintiff has presented no evidence to support his assertion that he suffered an actual

19  injury to court access as a result of Defendant Mejia's alleged mishandling of inmate appeals.

20  Moreover, Plaintiff cannot demonstrate any actual access-to-courts injury because he was able to

21  litigate his underlying deliberate indifference claim against Defendant Sanders in the present civil

22  rights matter.  Plaintiff's mere dissatisfaction with the handling of the aforementioned appeals

23  cannot establish a constitutional violation.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.

24  2003) (holding that a prison official's involvement in the handling of inmate appeals, without

25  more, is not actionable under section 1983).  Furthermore, Plaintiff cannot prove prejudice

26  regarding any contemplated or existing litigation, such as the failure or inability to meet a filing

27  deadline.  *See Lewis*, 518 U.S. at 348-49.  Accordingly, Plaintiff's access to the courts claim fails

28  as a matter of law.  Therefore, Defendant Mejia is entitled to summary judgment as to Plaintiff's

United States District Court
Northern District of California

claim of denial of access to the courts.

<strong>PLAINTIFF'S PENDING MOTIONS</strong>

Plaintiff has filed two motions entitled, "Motion for Administrative Relief." Dkts 95, 96. The Court addresses each motion herein.

## I.   MOTION FOR ADMINISTRATIVE RELIEF (DKT. 95)

On November 12, 2015, Plaintiff filed his first "Motion for Administrative Relief." Dkt. 95. In this motion, Plaintiff makes reference to the Court's September 23, 2015 Order granting the other Defendants' motion for summary judgment. Dkt. 95 at 1-2. Plaintiff also makes various discovery requests. *Id.* at 3-4. Finally, Plaintiff claims that he is "willing to settle the claim against Mejia for $85,900.00" and a new "boom box," and the Court construes this last statement as a request to refer this matter for settlement proceedings. *Id.* at 4.

First, Plaintiff requests clarification on the following statements from paragraph one of the "Conclusion" section of the Court's September 23, 2015 Order:

> 1.    The Court GRANTS Defendants' motion for summary judgment based on the failure to exhaust administrative remedies as his claims against Defendants Grounds and Warren. Dkt. 34. The aforementioned claims are DISMISSED without prejudice to refiling after exhausting California's prison administrative process. *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

*Id.* at 1-2. Plaintiff specifically requests the Court to clarify the words, "DISMISSED without prejudice to refiling after exhausting California's prison administrative process." *Id.* at 2. In its September 23, 2015 Order, the Court included the following analysis relating to Plaintiff's claims against Defendants Grounds and Warren:

> As explained in above, Defendants contend that Plaintiff did not exhaust his administrative remedies as to his deliberate indifference to safety claim against Defendants Grounds and Warren. Dkt. 34 at 15. Therefore, Defendants argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies as to his deliberate indifference to safety claim against these two Defendants. *Id.*
>
> Defendants have met their ultimate burden as the moving party by setting forth evidence to demonstrate Plaintiff's non-exhaustion as to his deliberate indifference to safety claim against Defendants Grounds and Warren, specifically by taking Plaintiff's sworn

United States District Court<br>Northern District of California

1    deposition, during which he concedes that he never filed grievances
2    against either Defendant.[7]  Dillingham Depo. 110:25-111:4; 118:13-16.  Furthermore, the Court finds unavailing Plaintiff's attempts to
3    directly contradict his aforementioned sworn declarations and
"recant" his earlier statements conceding that his claim against
4    Defendants Grounds and Warren is unexhausted, dkt. 73 at 2-4,
Plaintiff may not manufacture a dispute of fact by an affidavit
5    contradicting his prior deposition testimony.[8]  *See Radobenko v.
Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

In sum, Defendants have adequately shown that there were available
administrative remedies that Plaintiff did not fully exhaust as his
deliberate indifference to safety claim against Defendants Grounds
and Warren.

Dkt. 92 at 16-17 (footnotes in original).  As explained above, because Plaintiff conceded that he

did not file grievances against Defendants Grounds and Warren, the Court dismissed those claims

as unexhausted.  If Plaintiff wishes to pursue this claim, the Court explained that he may "refil[e]

after exhausting California's prison administrative process." *Id.* at 32.  This means that Plaintiff

may file another civil rights action raising his claims against Defendant Grounds and Warren, but

he would first have to file grievances at the prison relating to such claims.  Plaintiff is reminded

that the CDCR's appeal process consists of three formal levels of appeals: (1) first formal level

appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed

with the institution head or designee, and (3) third formal level appeal filed with the CDCR

director or designee.  Cal. Code Regs. tit. 15, § 3084.7.  A prisoner exhausts the appeal process

when he completes the third level of review.  *Id.* § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683

(9th Cir. 2010).  Therefore, *prior to* refiling his claims against Defendant Grounds and Warren,

Plaintiff must pursue his grievance (relating to those claims) through the highest level of appeal.

Plaintiff is also reminded that he would need to pay the full filing fee along with any new action

that he chooses to file.

---

[7] *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (a complaint may be dismissed by the court for failure to exhaust if a prisoner "conce[des] to nonexhaustion" and "no exception to exhaustion applies").

[8] In any event, with regard to Defendant Warren, Plaintiff claims that he submitted a grievance against this Defendant on January 2, 2014. Dkt. 73 at 2-3.  However, because the instant action as filed almost a month earlier—on December 13, 2013—the January 2, 2014 grievances cannot exhaust the claim against Defendant Warren.  *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (action must be dismissed unless prisoner exhausted available administrative remedies *before* he filed suit, even if prisoner fully exhausts while suit is pending).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Second, Plaintiff asks for instructions on what he should do "[i]f he believes the Court has

2   made errors [sic] (respectfully) overlooked evidence et al., so as to perhaps reconsider [its] grant

3   [of] [the other Defendants'] Summ. J. and deny it in full or part."  Dkt. 95 at 2.  At the time

4   Plaintiff filed his first "Motion for Administrative Relief," Defendant Mejia's dispositive motion

5   had not yet been resolved.  However, the Court has since resolved Defendant Mejia's motion

6   above.  Therefore, if Plaintiff so chooses, he may file a motion for reconsideration as to the

7   Court's September 23, 2015 Order granting the other Defendants' motion for summary judgment

8   (dkt. 92), or as to the instant Order granting Defendant Mejia's motion for summary judgment.

9   Plaintiff may also file an appeal to the Ninth Circuit.

10   Third, Plaintiff asks whether he is "allowed to continue to submit discovery request to

11   [Defendant] Mejia while the Court's Summ[ary] J[udgment] ruling is pending."  *Id.* at 3.  In its

12   October 28, 2014 Order of Service, the Court stated, "Discovery may be taken in this action in

13   accordance with the Federal Rules of Civil Procedure."  Dkt. 15 at 6.  Therefore, Plaintiff was

14   previously made aware that he was free to conduct discovery in this matter while Defendant

15   Mejia's dispositive motion was pending.  The Court notes that Plaintiff has since filed his

16   opposition to Defendant Mejia's motion.  Dkt. 93.  Further, Plaintiff has not filed any motions

17   relating to any discovery disputes in this matter, or indicated that he did not have sufficient

18   opportunity to discover affirmative evidence necessary to oppose Defendant Mejia's motion.

19   Accordingly, the Court need not construe his question as a request for a continuance under Rule

20   56(d) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 56(d) (Rule 56(d) provides that

21   a court may deny a summary judgment motion and permit the opposing party to conduct discovery

22   where it appears that the opposing party, in the absence of such discovery, is unable to present

23   facts essential to opposing the motion.).

24   Finally, because the Court has granted Defendant Mejia's motion for summary judgment,

25   any requests to refer this matter for settlement proceedings are DENIED.

26   Based on the foregoing, the Court GRANTS in part and DENIES in part Plaintiff's first

27   "Motion for Administrative Relief."  Dkt. 95.

28

United States District Court
Northern District of California

## II.   MOTION FOR ADMINISTRATIVE RELIEF (DKT. 96)

On December 18, 2015, Plaintiff filed his second "Motion for Administrative Relief." Dkt. 96.  On December 22, 2015, Defendants filed their opposition to Plaintiff's motion in which they argue the motion should be denied because Plaintiff "asks this Court for administrative relief against non-party prison officials located in a different venue, and based on allegations that are unrelated to the claims currently before the Court."  Dkt. 97 at 1 (citing Dkt. 96 at 1-4).  This Court agrees with Defendants.

Plaintiff's second "Motion for Administrative Relief" alleges problems with prison officials at the prison where he is currently housed, CSATF. Dkt. 96 at 1-3.  Defendants in the instant action are not employed at the CSATF, and the claims in this action have nothing to do with any constitutional violations at that facility.  To the extent Plaintiff seeks injunctive relief against these non-parties, his request is DENIED.  *See* Fed. R. Civ. P. 65(d) (an injunction is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys).  Meanwhile, to the extent that Plaintiff's motion could be considered to be a request for a preliminary injunction or temporary restraining order ("TRO") to compel CSATF officials to remedy such violations, such a request is also DENIED.  Plaintiff cannot obtain a preliminary injunction or a TRO against a non-party for wrongs different from the claims presented in the complaint in this action.  *See Kaimowitz v. Orlando, Fl.*, 122 F.3d 41, 43 (11th Cir. 1997), *cert. denied*, 523 U.S. 1138 (1998) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit"); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); *id.* (denying injunctive relief because "[i]t is self-evident that [plaintiff's] motion for temporary relief has nothing to do with preserving the district court's decision-making power over the merits of [his] 42 U.S.C. § 1983").  If Plaintiff wishes to complain about any constitutional violations at CSATF, he should file a new action in the U.S. District Court for the Eastern District of California, rather than the Northern District, because CSATF is located in the Eastern District.

1    In addition, Plaintiff also seeks the Court's "instructions" on how to exhaust the prison

2    administrative process as to claims that were adjudicated in another lawsuit, *Dillingham v.*

3    *Scruggs*, Case No. C 12-06537 YGR (PR).  Dkt. 96 at 1-2.  The Court notes that Case No. C 12-

4    6537 YGR (PR) is a closed case.  While Plaintiff did filed an appeal of the Court's grant of

5    Defendants' motion for summary judgment in that case, Plaintiff has filed a motion for voluntary

6    dismissal of that appeal, and the Ninth Circuit granted his motion on November 30, 2015.  Dkt.

7    101 in Case No. C 12-06537 YGR (PR).  To the extent that Plaintiff needs instructions on how to

8    generally exhaust his administrative remedies, the Court has already given him instructions on

9    how to do so above.  However, the Court DENIES any requests for instructions specific Case No.

10   C 12-06537 YGR (PR) because it is a closed case that is no longer pending on appeal.

11   Accordingly, Plaintiff's second "Motion for Administrative Relief" is DENIED.  Dkt. 96.

12   **CONCLUSION**

13   For the reasons outlined above, the Court orders as follows:

14   1.    The Court GRANTS Defendant Mejia's motion for summary judgment as to the

15   Eighth Amendment claim of deliberate indifference to Plaintiff's safety needs and the First

16   Amendment access to the courts claim.[9]  Dkt. 80.

17   2.    Plaintiff's first "Motion for Administrative Relief" is GRANTED in part and

18   DENIED in part.  Dkt. 95.

19   3.    Plaintiff's second "Motion for Administrative Relief" is DENIED.  Dkt. 96.

20   4.    Defendants' motion to strike Plaintiff's surreply is DISMISSED as moot.  Dkt. 90.

21   5.    The Clerk of the Court shall enter judgment as to all Defendants, terminate all

22   pending motions, and close the file.

23   6.    This Order terminates Docket Nos. 80, 90, 95 and 96.

24   IT IS SO ORDERED.

25   Dated: January 26, 2016

_____
YVONNE GONZALEZ ROGERS
United States District Judge

---

[9] The Court's finding that Defendant Mejia is entitled to summary judgment as a matter of law on Plaintiff's remaining claims obviates the need to address this Defendant's alternative arguments regarding an entitlement to qualified immunity.

United States District Court
Northern District of California

22